Jeffrey A. LeVee (State Bar No. 125863)
jlevee@JonesDay.com
Eric P. Enson (State Bar No. 204447)
epenson@JonesDay.com
Kathleen P Wallace (State Bar No. 234949)
kwallace@JonesDay.com
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071.2300
Telephone: +1.213.489.3939
Facsimile: +1.213.243.2539

Attorneys for Defendant
INTERNET CORPORATION FOR
ASSIGNED NAMES AND NUMBERS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

NAME.SPACE, INC.,

Plaintiff,

v.

INTERNET CORPORATION FOR ASSIGNED NAMES AND NUMBERS,

Defendant.

Case No. CV 12-8676-PA

Assigned for all purposes to Honorable Percy Anderson

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT ICANN'S MOTION TO DISMISS COMPLAINT**

[Reply Memorandum In Support Of ICANN's Request For Judicial Notice Filed And Served Concurrently Herewith]

Hearing Date: Jan. 23, 2013
Hearing Time: 1:30 pm
Hearing Location: 312 N. Spring St.

# TABLE OF CONTENTS


**Page**

INTRODUCTION .......... 1

I. Name.Space's 2000 Release Of ICANN Bars The Complaint. .......... 1

II. Name.Space's Antitrust Conspiracy Claims Are Deficient. .......... 4

III. Name.Space's Monopolization Claim Is Deficient. .......... 7

IV. Name.Space's Antitrust Injury Allegations Are Deficient. .......... 9

V. Name.Space's Trademark Claims Are Deficient. .......... 10

VI. Name.Space's Interference Claims Are Deficient. .......... 12

VII. Name.Space's Unfair Competition Claim Fails As Well. .......... 12

CONCLUSION .......... 12

## TABLE OF AUTHORITIES

**CASES** **PAGE**

*Baker Pacific Corp. v. Suttles*, 220 Cal. App. 3d 1148 (1990) ........ 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 4

*Brantley v. NBC Universal, Inc.*, 675 F.3d 1192 (9th Cir. 2012) ........ 10

*Gough v. Rossmoor Corp.*, 585 F.2d 381 (9th Cir. 1978) ........ 9

*Grillo v. State of Cal.*, 2006 WL 335340 (N.D. Cal. Feb. 14, 2006) ........ 2, 4

*High Tek USA, Inc. v. Heat And Control, Inc.*, 2012 U.S. Dist. LEXIS 100538 (N.D. Cal. July 18, 2012) ........ 9

*In re Citric Acid Litig.*, 191 F.3d 1090 (9th Cir. 1999) ........ 7

*In re Late Fee & Over-Limit Litig.*, 528 F. Supp. 2d 953 (N.D. Cal. 2007) ........ 7

*In re Nat'l Assoc. of Music Merchs., Musical Instruments & Equip. Antitrust Litig.*, 2012 U.S. Dist. LEXIS 118827 (S.D. Cal. Aug. 17, 2012) ........ 7

*Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.*, 2007 U.S. Dist. LEXIS 89946 (C.D. Cal. Oct. 29, 2007) ........ 6

*Jardin v. Datallegro, Inc.*, 2009 U.S. Dist. LEXIS 3339 (S.D. Cal. Jan. 18, 2009) ........ 2

# TABLE OF AUTHORITIES

**CASES** **PAGE**

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008) .......... 4

*Les Shockley Racing, Inc. v. Nat'l Hot Rod Assoc.*,
884 F.2d 504 (9th Cir. 1989) .......... 9

*Levi Strauss & Co. v. Shilon*,
121 F.3d 1309 (9th Cir. 1997) .......... 11

*Manwin Licensing Int'l S.A.R.L. v. ICM Registry, LLC*,
2012 U.S. Dist. LEXIS 125126 (C.D. Cal. Aug. 14, 2012) .......... 7

*McGlinchy v. Shell Chem. Co.*,
845 F.2d 802 (9th Cir. 1988) .......... 9

*Millennium Labs., Inc. v. Ameritox, Ltd.*,
2012 U.S. Dist. LEXIS 147528 (S.D. Cal. Oct. 1, 2012) .......... 11

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
465 U.S. 752 (1984) .......... 4

*Name.Space, Inc. v. Network Solutions, Inc.*,
202 F.3d 573 (2d Cir. 2000) .......... 3

*Nova Wines, Inc. v. Adler Fels Winery LLC*,
467 F. Supp. 2d 965 (N.D. Cal. 2006) .......... 11

*Official Airlines Guides, Inc. v. FTC*,
630 F.2d 920(2d Cir. 1980) .......... 8

*Olde Monmouth Stock Transfer Co., Inc. v. Depository Trust & Clearing Corp.*,
485 F. Supp. 2d 387 (S.D.N.Y. 2007) .......... 8

*Paladin Assocs. v. Montana Power Co.*,
328 F.3d 1145 (9th Cir. 2003) .......... 9

*Perez v. Uline, Inc.*,
157 Cal. App. 4th 953 (2007) .......... 3

# TABLE OF AUTHORITIES

**CASES** **PAGE**

*PGMedia, Inc. v. Network Solutions, Inc.*, 51 F. Supp. 2d 389 (S.D.N.Y 1999) .......... 3

*Prime Healthcare Servs., Inc. v. Service Employees Int'l Union*, 2012 U.S. Dist. LEXIS 123865 (S.D. Cal. Aug. 30, 2012) .......... 6, 7

*Tate v. Pac. Gas & Elec. Co.*, 230 F. Supp. 2d 1072 (N.D. Cal. 2002) .......... 8

*VeriSign, Inc. v. Internet Corp. for Assigned Names and Numbers*, 2004 U.S. Dist. LEXIS 17330 (C.D. Cal. Aug. 26, 2004) .......... 6, 7

**STATUTES**

15 U.S.C. § 1127 .......... 11

Cal. Civ. Code § 1542 .......... 4

Cal. Civ. Code § 1638 .......... 2, 3

# INTRODUCTION

Plaintiff name.space cannot avoid the unambiguous language in its 2000 release of ICANN, and it cannot sidestep the established antitrust, trademark and pleading principles that doom its Complaint. In its 2000 release, name.space "released and forever discharged" ICANN of the very claims name.space asserts in this action, claims that were not "unknown" to name.space when it signed the release. Moreover, name.space's Opposition does not address the substantive deficiencies with respect to name.space's claims: the arguments name.space advances regarding its conspiracy claims are as conclusory as the Complaint's allegations; the positions name.space takes regarding its monopolization claim ignore dispositive legal precedent, not to mention name.space's own allegations; name.space's trademark claims are not ripe for adjudication; and name.space still cannot identify a single contract or relationship disrupted by ICANN to support its tortious interference claims.

## I. Name.Space's 2000 Release Of ICANN Bars The Complaint.

In 2000, name.space executed a release in favor of ICANN so that ICANN would consider name.space's application for new top-level domains ("TLDs"). Name.space knew that ICANN might decline to award name.space any TLDs, or might approve other entities to operate those TLDs, but name.space specifically released ICANN from claims related to name.space's application for those TLD strings. The fact that ICANN waited twelve years to accept new applications for such TLDs does not mean that the language in the release is somehow less effective. The release is just as enforceable today as in 2000.

ICANN does not argue that name.space's 2000 release discharged ICANN of all liability on all theoretically possible claims into perpetuity. Instead, ICANN contends that name.space has released ICANN for claims relating to its 2000 Application and ICANN's "establishment or failure to establish a new TLD" in the

domain name system ("DNS") coordinated by ICANN, as the release makes clear.[1] (Mot. at 7-8.) Name.space cannot deny that its alleged injury directly flows from the 2000 Application, and each of name.space's claims are dependent on ICANN's "establishment or failure to establish a new TLD." (*Id*. 8-9.) In fact, name.space's Opposition specifically states that its "unfair competition and trademark infringement claims against ICANN ***are based on*** 'ICANN's willingness to allow competing TLD registries to use identical gTLDs in commerce . . . .'" (Opp'n at 20 (emphasis added).)

Name.space does not dispute that claims covered by a release must be dismissed with prejudice. *Grillo v. State of Cal.*, 2006 WL 335340, *7-8 (N.D. Cal. Feb. 14, 2006). Instead, name.space argues that the release does not apply because it "does not evidence an intention to release ICANN from future conduct." (Opp'n at 5.) This argument is not credible. Name.space's execution of the release was a ***prerequisite*** to ICANN taking action on name.space's 2000 Application. (RJN, Ex. C ¶ B14.) Thus, the release necessarily applied to conduct that would occur in the future. Indeed, the forward-looking nature of the release is evidenced in name.space's discharge of rights to any TLD that "***may be established***" in the DNS. (*Id*. ¶¶ B12, B14.2).[2]

Name.space also contends that the absence of an express waiver of California Civil Code section 1542 "demonstrates that it did not release future claims against ICANN." (Opp'n at 5.) But the lack of a Section 1542 waiver is irrelevant to claims that were specifically released because "[n]othing in [Section 1542] requires

[1] As set forth in ICANN's Request for Judicial Notice ("RJN") (ECF 20) and Reply In Support of its RJN, the Court may properly consider Name.Space's 2000 Application in connection with ICANN's Motion to Dismiss.

[2] Name.space cites *Jardin v. Datallegro, Inc*., 2009 U.S. Dist. LEXIS 3339 (S.D. Cal. Jan. 18, 2009), but the plaintiff in that case released only claims that related to the "transactions and occurrences between [defendant] and [plaintiff] ***to date***." *Id*. at *15 (emphasis added). The court held that the "to date" language was properly construed to bar claims relating to pre-settlement events. *Id*. at **14-15. The release here contains no such limitation.

that it be designated in the release or that a party specifically waive its provisions." *Perez v. Uline, Inc.*, 157 Cal. App. 4th 953, 959 (2007) ("While it might have been more comprehensive to have a reference to Civil Code section 1542 in the release, 'to be effective, a release need not achieve perfection.'") (quoting *Skrbina v. Fleming Cos.*, 45 Cal. App. 4th 1353, 1368 (1996)). Instead, a release is "binding on the signatories and enforceable so long as [it is] … clear, explicit and comprehensible in each [of its] essential terms." *Id.* (citation omitted).

Further, there can be no factual question that name.space was aware of the claims it asserts here when it executed the release. As ICANN explained in its Motion, in 1997, name.space sued Network Solutions, Inc. ("NSI"), the entity that administered the DNS prior to ICANN, claiming that NSI conspired to exclude name.space's TLDs from the DNS and that NSI asserted "monopoly control" over the DNS (precisely the claims that name.space asserts here). *PGMedia, Inc. v. Network Solutions, Inc.*, 51 F. Supp. 2d 389, 395, 401 (S.D.N.Y 1999). The Second Circuit affirmed dismissal of these claims just a few months before name.space executed the release. *Name.Space, Inc. v. Network Solutions, Inc.*, 202 F.3d 573 (2d Cir. 2000). Name.space does not even address this litigation history in its Opposition, a history that demonstrates that name.space knew when it signed the release in 2000 that it might have (and was releasing ICANN of) claims identical to those it had asserted against NSI that arose from "the establishment or failure to establish a new TLD."

Finally, name.space argues that the release is "ambiguous and overbroad" and may not be considered on a motion to dismiss. (Opp'n at 7.) The Court can determine as a matter of law,[3] however, that the release is free from ambiguity: name.space released ICANN "from any and all claims and liabilities relating in any

[3] *Baker Pacific Corp. v. Suttles*, 220 Cal. App. 3d 1148, 1153 (1990) ("Whether a contract provision is clear and unambiguous is a question of law, not of fact.") (quoting *Madison v. Superior Court*, 203 Cal. App. 3d 589, 598 (1988)).

way to (a) any action or inaction by or on behalf of ICANN in connection with this application or (b) the establishment or failure to establish a new TLD." (RJN, Ex. C ¶ B.14.2.) This language is more than sufficient to explain its legal effect. *Grillo*, 2006 WL 335340, at *7-8 (finding similar language releasing claims "relating to" certain events to be "clear and unambiguous"); Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit ….").

**II. Name.Space's Antitrust Conspiracy Claims Are Deficient.**

An antitrust "conspiracy" has been defined by the Supreme Court as a "meeting of the minds" or a "conscious commitment" between separate economic actors "to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Despite name.space's protestations, the standard for alleging an antitrust conspiracy in the Ninth Circuit is clear: "[T]o allege an agreement between antitrust co-conspirators, the complaint must allege facts such as a 'specific time, place, or person involved in the alleged conspiracies' to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 565 n.10).

Name.space's conspiracy allegations fall short and fail to "answer the basic questions: who, did what, to whom (or with whom), where, and when?" *Kendall*, 518 F.3d at 1048; Mot. at 9-12. And name.space's Opposition actually adds more ambiguity because it remains unclear whether name.space is claiming that ICANN Board Members conspired with ICANN, hijacked ICANN, conspired with others or conspired among themselves. (*Compare* Opp'n at 7:27-28 ("ICANN's board of directors conspired with each other and other named industry players"), *with* Opp'n at 9:4-5 ("ICANN entered into a conspiracy with current and former board members"), *with* Opp'n at 10:5-6 ("But name.space does not allege that ICANN

conspired with itself."), *with* Opp'n at 10:6-17 ("name.space also expressly alleges that non-board members are part of the conspiracy.").) What is clear is that simply alleging that a few members of ICANN's Board participated in a conspiracy is insufficient to state a claim under the antitrust laws.

In its Opposition, name.space repeatedly cites Paragraphs 61, 65, 95 and 96 to support its conspiracy theory, but these paragraphs do not come close to containing the factual content necessary to support an antitrust claim. Paragraph 61 alleges, "[u]pon information and belief," that four current and former ICANN Board Members allegedly have (or had) economic interests in the TLD registry market. (Compl. ¶ 61.) From there, the Complaint jumps to the conclusion that the 2012 Application Round was "the result of an unlawful series of agreements between ICANN and its co-conspirators," (Compl. ¶ 65), and that "ICANN has entered into a conspiracy that includes current and former members of ICANN's board of directors, Verisign, Afilias and the select few other companies that operate as TLD registries (the 'co-conspirators')." (Compl. ¶¶ 95, 96.)

Nowhere does the Complaint provide ***facts*** explaining that the Board Members listed in Paragraph 61 entered into an unlawful agreement – among themselves, with ICANN, or with others – to do ***anything*** relating to the TLD registry market or the 2012 Application Round. The Complaint fails to describe even one decision, vote or action taken by these four individuals, much less one relating to the TLD registry market, the 2012 Application Round or the alleged "cartel." Furthermore, the Complaint does not identify the people within ICANN, or the individuals at Verisign or Afilias, who allegedly engaged in the conspiracy with these Board Members. Likewise, the Complaint fails to even identify the terms of the 2012 Application Round that were the subject of the alleged conspiracy, except to amorphously conclude that the "co-conspirators intentionally structured the 2012 Application Round with the intent of limiting competition in the TLD registry market." (Opp'n at 9.) In short, name.space's Complaint simply fails to

give "sufficient notice of who is alleged 'to do what activity, when it was supposed to be done and how that activity was to be accomplished.'" *Prime Healthcare Servs., Inc. v. Service Employees Int'l Union*, 2012 U.S. Dist. LEXIS 123865, *17 (S.D. Cal. Aug. 30, 2012).

In addition, name.space's claimed conspiracy is no different than that rejected by Judge Matz in *VeriSign, Inc. v. Internet Corp. for Assigned Names and Numbers*, 2004 U.S. Dist. LEXIS 17330 (C.D. Cal. Aug. 26, 2004). There, VeriSign, the operator of the .COM and .NET TLDs, claimed that competing TLD operators, who were members of ICANN advisory groups, conspired with ICANN to restrict the registry services that VeriSign was permitted to offer. *Id*. at *13. Given ICANN's unique "'bottom-up' policy development process that considers or even solicits input from advisory groups," *id*. at *16, Judge Matz found that "in order to sufficiently plead a conspiracy, [VeriSign] must allege that ICANN's decision-making process was controlled by economic competitors who have conspired to injure VeriSign." *Id*. at *14. But VeriSign failed to allege facts demonstrating that the ICANN Board had been "captured" by the alleged conspirators – there was "no allegation (much less factual support for one) that the Board of ICANN actually conspired with any of VeriSign's competitors," and there were "[n]o specific facts to support [VeriSign's] theory that the Board complied with the conspirators' alleged attempt to 'hamstring' VeriSign." *Id*. at *20. Judge Matz concluded that participation by the alleged competitors in ICANN decision making – which clearly is all that name.space has alleged here – "is not enough to give rise to antitrust liability; ***control*** is required." *Id*. at *17 (emphasis in original), 25-26; *Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.*, 2007 U.S. Dist. LEXIS 89946, *26 n. 51, 28 (C.D. Cal. Oct. 29, 2007) (organizations that permit input from competitors do not violate the antitrust laws unless "coopted by one or more members of the industry in an anticompetitive way.").

In reality, all that name.space has alleged is that certain current and former

ICANN Board Members have commercial interests in entities operating in the TLD registry market. But this does not mean that these individuals are participating in an antitrust conspiracy every time they act. At best, these claims support only an alleged opportunity or motive to conspire, but neither "the opportunity or motive to conspire rationally support an inference of an illegal agreement." *Prime Healthcare Servs.*, 2012 U.S. Dist. LEXIS 123865 at *17; *In re Citric Acid Litig.*, 191 F.3d 1090, 1103 (9th Cir. 1999) (refusing "to infer participation in the conspiracy from the opportunity to do so."); *In re Nat'l Assoc. of Music Merchs., Musical Instruments & Equip. Antitrust Litig.*, 2012 U.S. Dist. LEXIS 118827, *30-31 (S.D. Cal. Aug. 17, 2012) (rejecting, on a motion to dismiss, an inference of conspiracy due to an opportunity and motive for the defendants to collude); *In re Late Fee & Over-Limit Litig.*, 528 F. Supp. 2d 953, 963-64 (N.D. Cal. 2007) (same). As Judge Matz concluded in *Verisign*, "there is nothing inherently conspiratorial about [ICANN's] policy development process." *VeriSign*, 2004 U.S. Dist. LEXIS 17330 at *16.

**III. Name.Space's Monopolization Claim Is Deficient.**

In its Opposition, name.space fails to address the Ninth Circuit and Central District cases supporting the principle that ICANN is legally incapable of monopolizing the "TLD registry market" because ICANN does not compete in that market. (Mot. at 14-16.)[4] Instead, name.space argues that ICANN should be

[4] ICANN has not conceded any claims by name.space relating to alleged monopolization of the purported "domain name" and "defensive registration" markets, as name.space argues. (Opp'n at 14.) ICANN did not address these alleged markets because name.space's Complaint does not allege monopolization of these markets. (Compl. ¶ 113 (ICANN is "preventing name.space from competing in the TLD registry market."). In any event, ICANN's arguments regarding the TLD registry market are equally applicable to the purported domain name and defensive registration markets (*i.e.*, ICANN does not compete in these alleged markets, and name.space has not alleged exclusionary conduct by ICANN to acquire or maintain a monopoly in the alleged markets). And Judge Gutierrez's ruling in the *Manwin* case was simply that the antitrust laws may apply to ICANN, in certain circumstances; he did not rule that ICANN was monopolizing any particular market. *Manwin Licensing Int'l S.A.R.L. v. ICM Registry, LLC*, 2012 U.S. Dist. LEXIS 125126, *13-15 (C.D. Cal. Aug. 14, 2012).

deemed a competitor in the TLD registry market because ICANN is responsible for approving the creation of new TLDs. (Opp'n at 14-15.) This argument contradicts name.space's own allegations that ICANN does not act as a TLD registry operator, (Compl. at ¶¶ 2, 19, 36-37), is inconsistent with the ICANN Bylaws that specifically forbid ICANN from operating a TLD registry, (RJN, Ex. B at Art. I, § 2), and ignores the cases ruling that "influence" over a market is not equivalent to competing in that market, for purposes of the Sherman Act. For example, in *Olde Monmouth Stock Transfer Co., Inc. v. Depository Trust & Clearing Corp.*, 485 F. Supp. 2d 387, 392 (S.D.N.Y. 2007), the defendant was not a competitor in the "stock transfer agent" market, but selected companies to serve this market. The plaintiff – who sought to serve as a transfer agent – argued that the defendant's "influence" over the transfer agent market, which it exerted from "its monopoly position in the closely related securities depository industry, 'is precisely the type of market power the antitrust laws were enacted to protect the consuming public [from].'" *Id*. at 392-93. The court disagreed and found that there was "no legal authority for the proposition that market power under Section 2 of the Sherman Act encompasses 'influence' by a non-competitor over the relevant market." *Id*. at 393; *see also Official Airlines Guides, Inc. v. FTC*, 630 F.2d 920, 926-27(2d Cir. 1980) (defendant's influence over the airline industry did not convert it into a competitor in that industry).[5]

Name.space's Opposition also ignores ICANN's arguments that, even if ICANN is a monopoly, it has not committed "exclusionary conduct" that violates Section 2 of the Sherman. The acts that name.space complains of are ICANN's

[5] Name.space relies on *Tate v. Pac. Gas & Elec. Co*., 230 F. Supp. 2d 1072 (N.D. Cal. 2002), but in *Tate*, the plaintiff and defendant competed in the supply of specialized fuel, the defendant abruptly stopped providing the plaintiff materials needed to compete, and this was because the defendant was preparing to launch its own technology in further competition with the plaintiff. *Id*. at 1075-76, 1078. None of these competitive elements are present here.

setting of the fee for applications in the 2012 Application Round and ICANN exercising the sole authority to select new TLDs, but neither act amounts to exclusionary conduct, as a matter of law. (Mot. at 16-17.) Name.space calls the argument "unavailing" (Opp'n at 16), but the fact is that the Supreme Court and every appellate court to address the issue has found that a monopolist (assuming ICANN is one) does not engage in exclusionary conduct by charging high or supra-competitive prices. (Mot. at 17.) Similarly, courts have found time and again that the exercise of power and authority gained through legitimate means – like that instilled in ICANN by the U.S. Government to approve new TLDs – does not violate Section 2 of the Sherman Act. (*Id*. at 16-17.)[6]

**IV. Name.Space's Antitrust Injury Allegations Are Deficient.**

In response to ICANN's argument that name.space has not alleged an "antitrust injury," name.space retreats to its purely conclusory allegations that competition has been "suppressed," "consumer choice" has been limited, and "the price of registering a TLD is artificially high." (Opp'n at 17-18.)[7] Apparently, name.space believes that it can use conclusory words to state an antitrust claim, but a plaintiff "may not merely recite the bare legal conclusion that competition has been restrained unreasonably."*Les Shockley Racing, Inc. v. Nat'l Hot Rod Assoc.*, 884 F.2d 504, 508 (9th Cir. 1989)). *See also High Tek USA, Inc. v. Heat And*

---

[6] Name.space argues that it has stated a claim for "conspiracy to monopolize" (Opp'n at 17), but the Complaint does not contain a conspiracy to monopolize cause of action, which has elements distinct from the Section 2 claim asserted in name.space's Second Claim for Relief. *Paladin Assocs. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003).

[7] Name.space also claims that unidentified "content producers" must spend money to defensively register their domain names, but this does not support an antitrust injury to name.space because name.space does not allege that it produces content or that it has defensively registered domain names. *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 811 (9th Cir. 1988) (a plaintiff must allege an injury not only to itself, but to competition "within a field of commerce in which the claimant is engaged (i.e., 'antitrust injury')."); *Gough v. Rossmoor Corp.*, 585 F.2d 381, 386 (9th Cir. 1978) (antitrust injury must be suffered in "the field of commerce in which the plaintiff is engaged.").

*Control, Inc.*, 2012 U.S. Dist. LEXIS 100538, *7 (N.D. Cal. July 18, 2012) (finding allegations that conduct "unreasonably restrains competition" insufficient). This is particularly true where, as here, it would appear that name.space's real complaint is that there is significantly more competition today as a result of ICANN's conduct. (Compl. ¶¶ 73, 90.) Of course, an injury caused by increased competition simply is not an antitrust injury. (Mot. at 19-20.)

Further, there are no factual allegations in the Complaint regarding the price of "registering a TLD." Name.space alleges that the application fee in the 2012 Application Round was too high, but name.space does not allege any facts to support this conclusion and, of course, name.space never actually paid this fee. In fact, name.space concedes that ICANN offered it a reduced application fee in the 2012 Application Round, but name.space chose not to accept it. (Compl. ¶ 70.) Moreover, mere "allegations that an agreement has the effect of reducing consumers' choices or increasing prices to consumers does not sufficiently allege an injury to competition. Both effects are fully consistent with a free, competitive market." *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1202 (9th Cir. 2012).

**V. Name.Space's Trademark Claims Are Deficient.**

To defend its trademark claims, name.space argues that they are not based on ICANN's possible approval of TLDs in the future, but are instead based on ICANN's current "offering [of] name.space's gTLDs for sale." (Opp'n at 20.) This argument contradicts the allegations in the Complaint and ignores the necessary elements of a trademark claim.

First and foremost, it is inaccurate for name.space to claim that ICANN has offered name.space's purported TLDs for sale. As the Complaint correctly alleges, the 2012 Application Round permitted all interested parties – even those like name.space that applied in the 2000 round – to apply for any TLD they wished to operate. (Compl. ¶¶ 62, 70, 87.) And as the Complaint also alleges, scores of third parties ***applied to ICANN*** for the creation of new TLDs, several of whom seek

TLDs that overlap with the TLDs name.space is allegedly using in its alternative internet. (Compl. ¶¶ 10, 87 ("applicants in the 2012 Application Round have applied for TLDs that are among the 482 gTLDs that name.space has operated").) ICANN did not "offer" any of name.space's TLDs "for sale." Instead, ICANN has received applications from ***others*** seeking to operate such TLDs in the DNS managed by ICANN. This reality distinguishes the cases name.space relies on in its Opposition, each of which included a defendant who had actually sold, offered for sale or marketed infringing products. *Nova Wines, Inc. v. Adler Fels Winery LLC*, 467 F. Supp. 2d 965, 971-72 (N.D. Cal. 2006) (noting that the defendant "was marketing" and "urging consumers to place orders" for allegedly infringing wine); *Millennium Labs., Inc. v. Ameritox, Ltd.*, 2012 U.S. Dist. LEXIS 147528, *3 (S.D. Cal. Oct. 1, 2012) (noting the plaintiff's allegation that the defendant "offered for sale" infringing reports); *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1314 (9th Cir. 1997) (noting that the plaintiff "admitted to offering to sell" infringing products).

Second, ICANN's receipt of an application from a third party (even if it sought a TLD comprised of a bona fide trademark) simply does not amount to a "use in commerce" of the alleged trademark by ICANN. As set forth in ICANN's Motion, a defendant must "use" a trademark "in commerce" before being liable for trademark infringement. (Mot. at 21-22.) A trademark is "used" in commerce "when it is used or displayed in the sale or advertising of the services and the services are rendered in commerce." 15 U.S.C. § 1127. Setting aside whether name.space could even establish trademark rights in its purported TLDs (a fatal obstacle to name.space's claims), name.space's Complaint does not contain any facts plausibly suggesting that ICANN has somehow "used" any of the TLD applications – or name.space's purported TLDs in those applications – in the "sale or advertising" of ICANN services. Nor has name.space alleged that ICANN has "used" the TLD applications, or their contents, to identify the source of anything

ICANN does.

No act of infringement has been pled, and no defined and imminent threat of infringement has been pled. All that has been alleged is remote speculation about what might happen at some point in the future. This is not enough to meet the justiciability requirement set forth in Article III.

**VI. Name.Space's Interference Claims Are Deficient.**

Name.space argues that it has sufficiently alleged its claims for tortious interference, but name.space still has not identified a single contract or relationship that has been breached or disrupted by ICANN's acceptance of applications for new TLDs. Moreover, name.space still has not alleged facts plausibly suggesting that ICANN took steps intentionally "designed" to induce breach of, or disrupt, name.space's business relationships. (Mot. at 23-24.) In short, name.space's interference claims are still deficient.

**VII. Name.Space's Unfair Competition Claim Fails As Well.**

In its Opposition, name.space concedes that its statutory unfair competition claim is dependent on its antitrust and trademark claims. As set forth herein and in ICANN's Motion, those claims must fall. So too, then, must name.space's unfair competition claim. (Mot. at 24-25.)

**CONCLUSION**

ICANN respectfully requests that its Motion to Dismiss be granted in its entirety.

Dated: January 14, 2013 JONES DAY

By: /s/ Jeffrey A. LeVee
Jeffrey A. LeVee

Attorneys for Defendant
INTERNET CORPORATION FOR ASSIGNED NAMES AND NUMBERS